UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALAN WYATT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1777** |
| **MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **SECTION "N" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and supplemental security income benefits ("SSI") under Title XVI of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.     BACKGROUND**

Plaintiff filed an application for DIB and SSI on March 1, 2010, alleging a disability onset date of February 11, 2010. (Adm. Rec. at 122, 127). Plaintiff alleged disability due to back, spine and pelvis pain and high blood pressure. (*Id.* at 151). Plaintiff, born on November 9, 1958, was 51 years old on the date on which he alleged disability and 52 years old at the time of the final administrative decision. (*Id.* at 126). Plaintiff has a high-school education (GED) and past relevant

work experience as a carpenter, laborer/scaffold builder and in maintenance.  (*Id.* at 153, 384).

Defendant initially denied plaintiff's application on June 2, 2010.  (*Id.* at 10, 63-66). Plaintiff sought an administrative hearing, which defendant held on March 2, 2011.  (*Id.* at 23-42). Plaintiff and a vocational expert ("VE"), Mary Kelly, testified at the hearing.

On March 25, 2011, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff did not meet the definition of disability through the date of the decision.  (*Id.* at 10-19).  In the decision, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the spine, hypertension and Hepatitis C.  (*Id.* at 12).  The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations.  (*Id.* at 13).  The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work except that he has difficulty standing or walking for prolonged periods and is unable to perform activities requiring repetitive bending. (*Id.* at 14). She also concluded that plaintiff can sit with periodic breaks and is able to carry light to moderate weight loads.  (*Id.*).  She concluded that plaintiff is unable to perform any past relevant work.  (*Id.* at 17).  Relying on the testimony of the VE, the ALJ determined that plaintiff can perform other work existing in significant numbers in the national economy.  (*Id.* at 18).  Specifically, the ALJ concluded that plaintiff can perform the jobs of cashier, inspector/tester and production worker. (*Id.*).  The ALJ thus denied plaintiff's application for SSI.  (*Id.* at 18).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled. (*Id.* at 114). On May 8, 2012, the Appeals Council denied plaintiff's request.  (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.  *Ripley*,

67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work

history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.   ISSUES ON APPEAL

There are three issues on appeal:

(1)   Whether substantial evidence supports the ALJ's conclusion that plaintiff has the RFC to perform light work.

(2)   Whether substantial evidence supports the ALJ's finding under step five of the Medical Vocational Guidelines.

(3)   Whether the VE's testimony was the product of reliable principles and methodology.

## V.   ANALYSIS

### 1.   Whether substantial evidence supports the ALJ's conclusion that plaintiff has the RFC to perform light work.

The Secretary defines residual functional capacity as "what [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a). It is a medical assessment to which all of plaintiff's limitations are relevant, even those that do not constitute symptoms crucial to diagnosis and treatment. *Id.* Plaintiff's ability to engage in physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching and handling are to be considered in evaluating the "exertional" aspect of residual functional capacity. 20 C.F.R. § 404.1545(b). The assessed exertional aspect is then labeled according to the categories set out in 20 C.F.R. § 404.1567. "Light work," the category in which plaintiff was found to be included, is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling

of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . .

20 C.F.R. § 404.1567(b).  If there is substantial evidence in the record to support a finding that plaintiff is capable of such work, the Court must affirm.

The ALJ based her RFC finding on the conclusions of Isolde Butler, M.D., who performed a consultative examination on plaintiff on May 22, 2010.  (Adm. Rec at 16-17, 304-08).  Plaintiff reported lower back pain to Butler but stated that he was independent in all activities of daily living. (*Id.* at 16, 304).  Plaintiff was a "[w]ell-developed, well-nourished male," and he appeared "in no acute distress."  (*Id.* at 16, 305).  He ambulated without assistance, rose from a sitting position without assistance, stood on his tiptoes and heels, tandem walked without difficulty and bent and squatted without difficulty. (*Id.*).  Butler found no swelling or tenderness of any joint, no tenderness to palpation over the lumbar spine, a negative straight leg raise, full range of motion in all tested joints, five out of five strength with adequate fine motor movements and the dexterity and ability to grasp objects bilaterally.  (*Id.* at 16, 305-06). Butler indicated that plaintiff's examination was "relatively normal."  (*Id.* at 16, 306).

> Dr. Butler opined that the claimant should be able to sit with periodic breaks; will have difficulty standing or walking for prolonged periods; and will be unable to perform activities that require repetitive bending.  She further opined that the claimant would be able to carry light to moderate weight objects; hold a conversation; respond appropriately to questions; and carry out and remember instructions.

(*Id.*).  The ALJ accorded significant weight to the opinion of Butler because she "had the opportunity to examine the claimant and her opinion is based on the examination signs and findings."  (*Id.* at 17).

7

Plaintiff first argues that the ALJ's RFC determination does not contain specific findings on plaintiff's exertional abilities. Plaintiff maintains that each exertional aspect of an RFC assessment – walking, standing, lifting, carrying, pushing, pulling, reaching, handling – must be assessed and labeled according to the regulations. Plaintiff argues that the RFC assessment must address how much weight he can lift occasionally and how much he can lift frequently. Plaintiff contends that while the ALJ concluded that he can carry light to moderate weight loads, she failed to conclude that he can lift 20 pounds occasionally and ten pounds frequently, the weights required for light work. Plaintiff maintains that the ALJ's finding is thus "internally inconsistent" and "vague." Plaintiff further argues that the finding that he has difficulty standing or walking for prolonged periods and is able to sit with periodic breaks are vague. In short, plaintiff contends that the ALJ was not specific enough in her findings.

The ALJ and the VE specifically discussed the additional limitations by Butler to plaintiff's RFC, and both agreed that "light to moderate weight" indicated a light RFC. (*Id.* at 39). Based on Butler's additional limitations, the VE reduced the number of light appropriate jobs in the national economy to include only light exertional jobs that did not require prolonged standing. (*Id.*). The VE specifically listed jobs that plaintiff can perform in the national economy with a light RFC and with the additional limitations noted by Butler. (*Id.*). There is no error here. Plaintiff points this Court to no case law – and this Court is aware of none – that an ALJ's RFC determination is error when she fails to include specific numbers in that determination. Simply by concluding that plaintiff has a light RFC means that the ALJ concluded that plaintiff can, *inter alia*, lift 20 pounds occasionally and ten pounds frequently. This argument has no merit.

Plaintiff also argues that the ALJ's RFC determination is contrary to the definition of "light work" in the regulations. Specifically, plaintiff contends that light work requires standing or walking six hours in an eight-hour workday, and Butler opined – and the ALJ adopted the opinion – that plaintiff has difficulty standing or walking for prolonged periods. (*Id.* at 17). As noted, however, the VE explicitly reduced the number of light-work jobs to those that did not involve prolonged standing or walking. (*Id.* at 39). The VE testified that a hypothetical individual of the same age, education and work history as plaintiff, with his specific limitations, could perform work as a cashier, inspector/tester and production worker. (*Id.* at 36-42). An ALJ may properly rely on the testimony and the conclusions of a VE. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). As the Commissioner correctly notes, even though the additional limitations by Butler eroded the occupational base, the VE took this erosion into account in concluding that plaintiff could perform the jobs listed above.

Lastly, plaintiff contends that his inability to stand or walk for prolonged periods and inability to perform repetitive bending limit him to sedentary work, and he must thus be found to be disabled under the Medical Vocational Guidelines. But plaintiff points to no evidence in the record to support a finding of a sedentary RFC. Such an RFC must be corroborated by the evidence, *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991), and the ALJ concluded that the objective medical evidence supported a light-work RFC. It is the responsibility of the ALJ to determine the RFC. *Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317, 2003 WL 22427104, *1 (5th Cir. Oct. 22, 2003). And plaintiff's testimony alone can not satisfy the medical component of the standard set under the regulations. 20 C.F.R. § 404.1528(a). In addition, the VE specifically found jobs in the national

9

economy that plaintiff can perform with his additional limitations, jobs that she stated specifically were light – and not sedentary – jobs. (Adm. Rec. at 40-41). The Court finds that substantial evidence supports the ALJ's RFC determination.

> **2.     Whether substantial evidence supports the ALJ's finding under step five of the Medical Vocational Guidelines.**

As noted above, at step five of the sequential evaluation, the burden shifts to the Commissioner to show that there is other gainful employment that the plaintiff is capable of performing in spite of his existing impairments. *Shave*, 238 F.3d at 594 (quoting *Crowley*, 197 F.3d at 197-98). For the following reasons, the Court finds that substantial evidence supports the ALJ's finding under step five.

Plaintiff argues that Social Security Ruling ("SSR") 83-12 requires that he be found capable of only sedentary work. He contends that SSR 83-12 requires a finding that his exertional limitations – as reflected in the ALJ's RFC assessment – reduce the occupational base to such a great extent that he be found disabled. In other words, plaintiff essentially argues that the jobs identified by the VE that he is capable of performing are so limited in number due to his exertional limitations that the ALJ should have found him capable only of sedentary work. Plaintiff maintains that the ALJ obtained the testimony of the VE only to create an "illusion" that jobs exist in significant numbers in the economy that he can perform. Plaintiff notes that the VE testified that with his limitations, he can perform only ten per cent of those jobs identified by her.

The Court has already determine that substantial evidence supports the ALJ's RFC assessment of light work. Again, plaintiff points to no objective medical evidence in the record –

apart from his own subjective complaints – that would direct a finding of sedentary work. As the Commissioner correctly notes, subjective complaints must be corroborated by objective medical evidence in the record. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988)).

The VE testified that considering plaintiff's age, educational background, work experience and RFC, he can perform work as a cashier (4,000 jobs in Louisiana and 200,000 jobs nationally), inspector/tester (1,000 jobs in Louisiana and 100,000 jobs nationally), and production worker (1,000 jobs in Louisiana and 100,000 jobs nationally). (Adm. Rec. at 18, 39-40). The Fifth Circuit has held that an ALJ may rely on the testimony and conclusions of a VE under factual circumstances such as those here, *i.e.*, when additional exertional limitations reduce the number of jobs in the economy. *Carey*, 230 F.3d at 145. Even with the reductions, the VE still identified approximately 6,000 jobs in Louisiana and 400,000 jobs nationally. The VE thus identified a significant number of jobs in the national economy. *See, e.g., Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (finding that 500 jobs is a significant number of jobs in the national economy).

Plaintiff's argument that SSR 83-12 directs a finding that he is capable of only sedentary work misses the mark. The Commissioner is correct in that the overriding holding of SSR 83-12 is precisely that in situations such as this one, *i.e.*, when additional exertional limitations forces a reduction in the occupational job base, and when plaintiff would be found disabled under the grids with an RFC of sedentary and not light, the ALJ should use the services of a VE. SSR 83-12, 1983 WL 31253, *2 ("Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. The publications listed in sections 404.1566 and 416.966

of the regulations will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful. State agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops."). Here, while the ALJ determined that plaintiff has the RFC to perform light work, she still relied on the testimony of the VE because of the additional exertional limitations to determine that a significant number of jobs exist in the national economy. *Carey*, 230 F.3d at 145 ("The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."). There was no error here.

    **3.    Whether the VE's testimony was the product of reliable principles and methodology.**

Plaintiff contends that the VE's testimony here violated the principles enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), codified as Federal Rule of Evidence 702. Plaintiff assert that the VE's "experience" in the field and observing jobs being performed does not meet the *Daubert* standards. Plaintiff also argues that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"). Plaintiff maintains that the ALJ failed to inquire into the basis of the VE's testimony that he could perform the light jobs noted above or the basis of the VE's reduction in the number of each job. These arguments are without merit.

Plaintiff's argument that the VE's testimony and conclusions violated *Daubert*, and thus Federal Rule of Evidence 702, lacks merit. As the Commissioner correctly notes, the regulations allow an ALJ to receive evidence at the hearing that would be inadmissible under the Federal Rules

of Evidence. 20 C.F.R. § 416.1450(c) ("The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court."). Moreover, Rule 702, which essentially codified the *Daubert* holding, does not apply to disability determinations. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("Rule 702 does not apply to disability adjudications, a hybrid between the adversarial and the inquisitorial models."). Indeed, an ALJ may take administrative notice of any reliable job information, including information provided by a VE. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Plaintiff also contends that the vocational expert's testimony is unreliable because it conflicted with the DOT. However, the VE specifically testified that her opinions did not conflict with the DOT. (Adm. Rec. at 40). As noted above, the VE only reduced the number of positions available given plaintiff's RFC. (*Id.* at 39- 40). Moreover, even if a conflict existed, a conflict between the VE and the DOT is not reversible error. The Fifth Circuit has explicitly held that if the DOT and VE conflict, the ALJ may rely on the VE's testimony if the record reflects an adequate basis for doing so. *Carey*, 230 F.3d at 146-147. In *Carey*, the Fifth Circuit explicitly noted that it had earlier determined that the DOT "is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Id.* at 145 (citing *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986)). The requirements listed in the DOT are merely the maximum requirements for a position as it is generally performed and not the range of requirements of a particular job as it is performed in a specific setting. *See Jones v. Chater*, 72 F.3d 81, 82 (8th

Cir. 1995) (noting that the job definitions in the DOT represent approximate maximum requirements for each position rather than the range). That is precisely why the Fifth Circuit sanctions reliance on the testimony of a VE when a potential conflict exists – although it does not here – between the VE and the DOT. As noted above, "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey*, 230 F.3d at 145.

Lastly, the Court notes that plaintiff had the opportunity to cross-examine the VE on these issues and he did not do so, and neither has he offered contradictory evidence that positions as a cashier, inspector/tester, and production worker would not be able to accommodate his limitations. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005) (finding that attorney neither cross-examined the vocational expert nor offered contradictory evidence and when claimant fails to offer contradictory evidence, claimant fails to meet his burden under step five); *Carey*, 230 F.3d at 146-147 (holding that claimants should not be permitted to scan the record for implied or unexplained conflicts when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing). While the Court recognizes that counsel for plaintiff asked the VE the basis of her conclusions, he offered the ALJ no evidence to contradict her testimony and failed to challenge it before the ALJ. Accordingly, this Court finds that these arguments have no merit.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's case be DISMISSED WITH

PREJUDICE.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 5th day of August, 2013.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**